Good morning, Your Honors. Can you hear me okay? I believe so, thank you. May it please the court, my name is Taryn Darling-Hill and I am here with my counsel Jeff Thomas on behalf of Brent Nicholson and the LLCs. The appellant, I would like to reserve three minutes for rebuttal, and I will keep an eye on my time. The appellants bring several issues to the court today, but I'm going to judicial estoppel and the substantive claim and the district court's misapplication of the Bush case. Let me just ask you about the judicial estoppel point, because that's obviously very important in this case. The district court, of course, did take that into account, and I want to ask you what what's your best authority for the proposition that the district court's misapplication of the facts of judicial estoppel was improper? Well, Your Honor, I think the Ninth Circuit has spoken on that issue in both Ocwin and Zucoula. I also think the Supreme Court in New Hampshire v. Maine is on point, and the Ninth Circuit again in Milton Green v. Marilyn Monroe. I don't think this is a judicial estoppel case. Why not? What's your very best argument, counsel? The very best in both Zucoula or Ocwin. I think this one's tougher than Ocwin. I was on Ocwin. This is much tougher for me to understand how this happened. If we're talking about a lay person, an unsophisticated person, an unrepresented person who didn't really put two and two together and recognize that in this personal bankruptcy action, my pending wrongful termination claim might really be an asset that needs to be disclosed on a bankruptcy schedule. That's sort of one thing. And of course, we're very mindful that it's the creditors that really get hurt. So we have to be very careful about that. But in this case, that's just not the situation at all. And we're talking about part of the LLC's claims were disclosed and part of them were not. So to me, it seems to be a much tougher argument for you to make. Well, I'd like to clarify that for the Court. The LLC's claims were disclosed. So what's distinguishable about Ocwin and Zucula and this case is that Mr. Nicholson filed a personal bankruptcy. He filed a Chapter 11, which has prolific amounts of reporting. And he's an individual that had 20 LLC's. So a debtor is obligated to disclose all of their assets. He forgot four of his LLC's initially. Why? Why those four? How is it possible that he listed some of them and not others? It would be a much easier argument, I think, if all of them had been treated the same. Well, ultimately, the assets and those LLC's were disclosed before confirmation, which is important. That was a long time later. It was a year later, Your Honor. I don't think you've answered the question. I'm not trying to get in your way, but I want to give you your very best chance to tell me what I'm missing here, because I know it's very important to your client. And so I take it really seriously. But initially, when the decision was made to list some of them and not all of them, I don't see anywhere in this briefing where that was explained. Well, there are a couple of declarations from the debtor himself, Mr. Nicholson, and from the bankruptcy trustee, all which explain where the LLC's were disclosed. And they were disclosed prior to confirmation. I realize you're not answering my question. My question is, why were they treated differently? Why were the LLC's treated differently? Yes. And that's not necessarily in the record. Although Mr. Nicholson, had he been provided the opportunity to explain the mistake, would have told the court, well, I didn't think those LLC's were even operating. I don't think they were assets. I didn't think of them as held even. He had an 85 percent interest in all four LLC's, did he not? I believe he did, Your Honor. Just that he had a majority interest in most of the LLC's. However, when a debtor has got 20 LLC's, and he's personally filing bankruptcy, he's required to disclose his assets, which include his interest in the LLC's. He testified later, and this was on summary judgment, and Ah Quin is on point on this issue. If a debtor has indicated that there is mistake or inadvertence, the Ninth Circuit's been very careful about this in recognizing that debtors do make mistakes. We shouldn't hold them to this very difficult consequence, penalizing ultimately innocent third party creditors, where the mistake was testimony in the record. What role, counsel, does the point made by my colleague, Judge Christin, have? That is, you're dealing with a very sophisticated man. This is no Rube. This is a guy who's been doing this thing for payloads for years and years and years, and done well. Why the difference? He disclosed some, but not all of them. I'm struggling with the same thing that at least she is. How do we say this is just a casual inadvertence? We're seeing this, frankly, more and more in bankruptcy cases where people say, oh gee, I forgot. Well, he has some major point. What role should the sophistication of Mr. Nicholson play in our evaluation? That is an interesting question, your honor. I think it plays a big role. I think it is. I think that's a question for the trial court, or in this case, the bankruptcy court, who would be able to investigate whether or not it was inadvertent. In Ocwin, there was testimony on both sides. In fact, I believe the Ninth Circuit gave credence to the district court's determination that the evidence tended to establish, actually, that Ms. Ocwin had, in fact, intentionally failed to disclose, but there was still evidence in the record that it might have been inadvertent. At summary judgment, you have to consider all facts and inferences in the light most favorable to the non-moving target. But he signed this under penalty of perjury. He did, your honor, and then he corrected it. This is another important point, and I was trying to address Judge Christin's question on this as well, that in Ocwin,  the interest and the possibility of the litigation, which hadn't yet been filed against Rite Aid, was disclosed and was part and parcel for the creditors to consider on confirmation. Let's just say, hypothetically, this were a tax return, not a bankruptcy filing, and he signs it under penalty of perjury. I didn't get any income from this. I forgot. How's that going to fly? Well, I think that that's a clearer case, your honor. Why? It's under penalty of perjury? Well, no, because it's a more complicated question, but if he's establishing that he made no income from something, and he's arguing that is the ultimate issue, and he makes a directly contradictory statement, then I think judicial estoppel does apply. In this case, we don't have, there's no evidence actually in the record that this is an inconsistent statement. The court, the district court, who is not a what Thrifty is selling, these disclosures meant. If you look actually at the declaration filed on behalf of the defendants by Mr. Sato, I believe at, I can find that record for you in just one moment, 484, SER 484. They recognized that the existence of all the LLCs and their potential causes of action against righted was ultimately disclosed before confirmation. That's indisputed. So then we have a testimony from three officers of the court, all bankruptcy attorneys, all of them acknowledging that a zero valuation on certain assets is common practice in bankruptcy. And that's where these cases get really complicated. If it's a directly, a directly conflicting statement, we have Marilyn Monroe case, where the estate argued for 40 years that she died in testate with a domicile of New York, and they won on that argument in multiple litigation. But let me just ask you, are you saying that this issue, the judicial estoppel issue should be remanded ultimately to the bankruptcy court, where the bankruptcy court would hold hearings to determine what Mr. Nicholson intended by this? Is that your point? Ultimately, Your Honor, yes, either the bankruptcy court or the district court, because under AQUIN, if there is a conflict in the record, if there's a material issue of fact with regard to intent, now there wasn't on Zaccoula. Zaccoula, there was no evidence in the record that the debtor ever argued mistake or inadvertence. Here it's undisputed that it was mistake, that mistake or inadvertence were argued in the underlying record. That under AQUIN requires a remand, either to the district court to make findings, but ultimately I believe it's more appropriate in front of the bankruptcy court who's steeped in the practice of bankruptcy disclosures and whether the actual disclosure hurts the creditors or not. In this case, we're concerned about the creditors. They're the innocent third party. That will always be the case. It will always be the case. So if your exception would really swallow the entire rule. Actually, Your Honor, I respectfully disagree. I think judicial application on this case, and if you look at the Eleventh Circuit, which is kind of exceptional, they moved to vacate en banc an opinion that they issued last summer on the understanding that the way these cases judicial estoppel is being applied is not as originally intended to preserve the integrity of the court, but it's really for savvy defendants to defeat meritorious claims at the detriment of the creditors. That's why it really matters whether the defendant knew what he was doing or the petitioner in bankruptcy knew what he was doing, at least in my book. I fully agree with you, Your Honor. Can I ask you a question? I have two questions for you. Yes. I have a note that indicates that ER 120 to 125 post-confirmation reports were dated in June of 2014, but not filed. The bankruptcy docket shows they're not filed until June of 2015. I think that's imprecise, Your Honor. I think there was another site, and I will get it for you, Your Honor, on rebuttal, but there was an issue about whether, I think there was a reference from defendants that it wasn't served on creditors, and generally creditors aren't served everything in bankruptcy, but it was filed. And what happened... Bankruptcy? In the bankruptcy court, on the docket. In June of 2015? No, I believe in June of 2011, Your Honor. The periodic report. Okay, if you've got that, that would be really helpful. Okay. Because I'm talking about post-confirmation reports. Oh, I'm sorry. Let me clarify, Your Honor. Yes, the evidence, the fact that the liquidating trustee, whose job it is to liquidate assets on behalf of the creditors, was aware of the active litigation and the creditors' rights to recover on these LLCs, that we're not arguing that that's proof of Mr. Nicholson's intent, but it is proof that the creditors weren't harmed because they knew of the recovery of assets. So what's your very best... Where do I go? Where do I look in the record? This is my last question, last time. Certainly, Your Honor. To show me that he made this mistake by belittling some of them and not the others, what's his best... What have I got? You look at the B-26 disclosures. I will verify where those were, Your Honor. Okay. Which were filed in June of 2011. Those were a year after he filed bankruptcy and a year before the LLCs pursued litigation against Thrifty. And what am I going to find there that I haven't already seen? You are going to find disclosure of all of the LLCs and a reference to the fact that the LLCs have a right to pursue litigation against Thrifty. SCR 1020-1022, I can give you the site. Okay. Thank you, Your Honor. No, and I'm not trying to be flip, but it's just so important. And I'm not sure that we're communicating. I see the disclosures here, what you're calling the disclosures. I'm asking for, if you've got it, something that tells me that there was an issue of fact raised that the district court missed that would have raised the possibility that these really were inadvertently not disclosed. And that is Mr. Nicholson's declaration. I will get you that site as well. And then it's referred to on SCR 484, which is the defendant's acknowledgement that there were, in fact, issues raised about mistaken inadvertence on behalf of Mr. Nicholson. All right. And I realize I've got two minutes left, so I'm going to answer. I have a question I wanted to ask. Why didn't Nicholson disclose the LLCs claims against the appellees in those documents? By the time Nicholson filed the amended schedule, appellees had already terminated two of the leases. By the time the proposed plan was submitted, all of the other LLCs leases had been terminated. So if I understand Your Honor's question, it was... Why he didn't disclose his claims against appellees? Well, he did ultimately disclose them, Your Honor, in regard to those B-26 disclosures where he hadn't yet filed the litigation. The LLCs hadn't yet filed the litigation. And I believe that Mr. Nicholson was trying to reach some... trying to figure out what the world looked like and continue these projects, ultimately. Thank you, Your Honor. I'll reserve. Thank you. Good morning, Mr. Miller. Good morning. May it please the Court, I am Delbert Miller. I represent Thrifty Payless, Inc. and Rite Aid Corporation, the defendants in the District Court and the appellees here. The standard of review in both the Hamilton case and in Oquan indicated that the judicial estoppel is reviewed for abuse of discretion and the test of abuse of discretion on judicial estoppel is an erroneous view of the law or a clearly erroneous assessment of the evidence. Oquan sent attached... sent the case back for factual inquiry because it found that that court had an erroneous view of the law in saying that if you knew it and you didn't disclose it and you had a motive, it's automatic that you are bound by judicial estoppel. Judge Lasnik did not have any erroneous view of the law. He discussed it in detail in a scholarly, thorough way. He understood the law perfectly. And so the standard of review here is, in fact, abuse of discretion. What you're saying is Judge Lasnik understood and applied the law correctly and he also applied the facts correctly? Yes, yes, because when you... on judicial estoppel, with regard to the facts, the issue is whether or not he had a clearly erroneous assessment of the evidence. And the evidence in this case, this is probably one of the strongest cases for the appropriateness of the stand. The factors that Judge Lasnik looked at was, in the Oquan case, the cases seem to go off on, well, when can you braze a mistake? Because the issue is, well, he knew it, it was... he knew the claim, it didn't get listed, he had a motive, and the courts are struggling with when do you allow the argument to be it was a when the omission is brought to the debtor's attention or the plaintiff's attention, he takes immediate action. Oquan, she moves in and she tries to make changes. In this case, Nicholson deliberately, and the judge, in analyzing evidence, in assessing the evidence, Judge Lasnik found that the omissions were of the LLCs to list four, in the bankruptcy schedules, four LLCs with multi-million dollar claims is not disputed. And it's interesting, if you look at SER 1200, that you will find that the four entities that were left out were entities for which he was in negotiation in the summer of 2010, and for those four, he was demanding four million dollars from Rite Aid in order to settle his disputes. These are the settlement negotiations that occurred in 2010, at the time he's making his filings. And that's in the record? That is in the record. SER 1200. On August 13, 2010, his lawyer is putting a cash price on dealing with those four LLCs. There's no issue about his being aware of every one of his LLCs. And there is simply no excuse not to list them all in the schedules, except for the fact that he was looking to get cash for those four, and the others were a little more complicated, so they got listed. Could you turn to joint and separate liability for attorney's fees? There's two issues there. The LLCs and Nicholson. And Mr. Nicholson, personally, and I'm wondering what is your best authority for that? All right, the best authority for that is the agreements between the parties. And the privity argument regarding the LLCs, first of all, the judge looked at the commonality of interest between the LLCs and the creditor. He was the sole manager, 85% owner. It could not be more clear. The interesting thing, though, is to take a look at the joint prosecution agreement. The joint prosecution agreement at SER 1035 to 1037. We happen to have 1037 right here. Yes. All right, so which part of it do you want me to look at? I want you to look at... The split of the settlement loans, where we... at the bottom? I suggest you start... 1037 is the third page. Right. And the first page is what I would like you to look at. Okay. The first page is 1035, and the key here is the second sentence under the recitals. The companies, the LLCs, and the Nicholson's have a common interest in all issues in this litigation. And they acknowledge that. So it's all for one. The LLCs are nobody but Nicholson. But I'm not sure you... I understand that, I think, sort of factually. My question is, what's the strongest authority for the legal authority, for the court's ruling? Well, the fact that they're... the idea is that it's one case on behalf of both the Nicholson's and the LLCs. That's the factual part that I get. I'm trying to ask you what legal authority, what the court relied upon to order that these fees should be held shared. Because he's asserting contract claims. Nicholson is asserting contract claims jointly with the LLCs, and the law is that even a non-party to a contract, if he didn't sign the leases individually, if he's asserting contract claims under the leases to which he's not a party, he is bound by the attorney's fees provision in that document. So you keep stating the conclusion and saying the law is, and I'm asking you for the authority? Well, they are cited in the brief. I mean, I don't have... there's case law that clearly says in the state of Washington, if you sue on a contract... Is the answer to my question that your best authority is in the brief? Well, on that particular question, yeah, because I don't have it in my head at the moment. Okay, all right. But what about Mr. Nicholson personally? But the issue also with regard to 1037 is the record. This shows where the money is going to go. Before you get that, you jumped from the joint and several liability to the attorney fee issue. And I want to go to the attorney fee issue. Do you have any case law under either California or Washington that would show that either your client or Mr. Nicholson is entitled to fees from a non-signatory of the contracted issue? I can't find one. I believe... Where is it? In California or... California or Washington, either one. Where's your case law authority? The order granting in part motion for attorney's fees, Judge Glasnick cites, Nicholson opted to assert claims on a contract that contained a clear attorney's fees provision, opening himself up to an award of fees. See, deep water... I read that. I read that, but that's not an authority. I'm asking for a case. Water brewing versus fairway? That case doesn't help. Again, we're talking about a contract. Well, both Washington and California say that you basically have a reciprocal attorney fees. If people agree to it, that's fine. But I'm talking about a case that says that with respect to a non-signatory, that you can get attorney fees from that person. Where's that case? Well, I think we've cited him in the briefs, and I haven't memorized them, but I would urge the Court, and we'll submit an additional... What I saw is easily distinguishable, so I'd really like you to give me something that's clearly on point. All right? We'll do that. But the thing is, if someone sues me and claims that he's a party to the contract, and I even successfully beat him because he didn't sign, I think the law is he still has to pay the attorney's fees because he asserted the claim based on the contract. And that he asserted contract claims, I think, is clear in this record. Now, you may say, well, if the Court is suggesting you can assert claims on a contract and not be bound by the provisions, then we could do that. And this is in our motion for award of attorney's fees. There are many cases cited, footnote 13, and I'll get you the SCR site on that later. Okay. What's the SCR site? I didn't... We'll get that. Okay, just so you're clear about this. I'm clear. If you give me time, I'll give you the site. You know, the standard rule is you don't get attorney's fees, unless there's a statute or a contract that says you do. I agree with that. If you're a signatory to the contract, that's great, because both California and Washington have reciprocal clauses. But what I haven't seen is a case where a non-signatory to the contract is held responsible for attorney fees to a contract that he or she personally did not sign for him or herself. When that person sues on that contract, seeking the benefits of that contract, that's the difference. That is the argument in your brief. Pardon? I get the argument. I'm looking for the case law. Where's the case law that says you get attorney fees? I think we gave you cases, and we'll emphasize them. Good. I'll look forward to it. All right. So the point is that he did assert the claims, and I think the law is clear on that point. Now, the interesting thing about this mistake argument, you know, Nicholson, he didn't even pretend there was a mistake. He made no claim that there was a mistake in omitting the four LLCs or in valuing the claims at zero. The evidence is clear that he listed on the six LLCs he did identify, he listed them as unknown originally in his schedules. And a creditor comes back and says, what is unknown? We need more information. And so Nicholson comes back and says, the value of these LLCs is zero. He went from unknown, which would have been better from this case point of view, to zero, which was a flat-out inconsistency with the claims made in the case. That's with the ones that he did list. Your opposing counsel argues that in this case, that what he did by listing a zero was common practice in bankruptcy, it was no affirmation of his intention, and that there simply are insufficient facts to permit a judge, without having basically a finding of fact kind of hearing, to make a determination of what his intention was, and that his intention is what controls here. But the evidence was before the court. I didn't mean to interrupt. I did that, sir. But bottom line is, is Mr. Nicholson's intention the bellwether of this issue? Is that what we have to find here, is what he intended by his failure to list these assets? I think you're running a risk of saying that you've got to go into subjective intent on all these things. It would be a little risky. But no, the point is, the evidence is clear that he listed them at zero, and the evidence before Judge Lasnik was that at the same time, contemporaneously, when he goes from unknown to zero, he's demanding millions from Rite Aid. So is that enough in and of itself? Yes. Judge Lasnik has evidence, apparently, that Mr. Nicholson is asking for millions at the same time he's listing it at zero. Exactly. Is that enough to show that he was defrauding? That is enough to show that he is intentionally putting a false number down, a number that is either false to Lasnik when he's suing for millions, or it's false to the bankruptcy court, one or the other. Why is that enough? Because they're completely inconsistent. Zero is not 59 million. And that's what Lasnik, all Lasnik needed. The evidence that Lasnik looked at was the complete record. But O'Quinn says we look to mistake and inadvertence, and we have to see whether or not there was an inadvertent mistake. Your argument is equally problematic for us because it would mean that any time there's a, it would never allow for judicial estoppel any time there's a failure to list. No, I think the point is that he's assessing evidence. In O'Quinn, the question was they didn't even look at the evidence. They didn't look at the evidence. Judge Lasnik looked at a lot of evidence. And under your case law, the issue is if there's clearly erroneous assessment of the evidence. So he took these facts. He took all these facts. You saw the SER, huge. And Judge Lasnik went through it all. The facts are there. The inconsistent testimony from Nicholson is to zero. And he testified we'll never get a nickel from this. We'll never get anything. His testimony is in the record. And he's putting it down at zero. Is it your view that Judge Lasnik listed in his order all of the facts upon which he relied to make his determination that Mr. Nicholson intended to defraud the creditors? And as a result, that's all we need. Judge Lasnik's ruling articulates and describes the evidence that he considered and upon which he relied. And he did a very thorough job. And we're going to review this for clearly erroneous. Clearly erroneous. Okay. And you should not disturb that unless it is clearly erroneous. So the answer to Judge Smith's question about the bellwether and whether we consider inadvertence is what? Excuse me? I just don't think you've answered Judge Smith's question. Which one? He asked several times about what we do with inadvertence. And I understand that you think that there is ample evidence. And I think the question is whether or not. What do you do with inadvertence? Well, that's a very interesting policy argument. The question was, one more time, his question was, is that the bellwether? Don't we need to look to see why there was the failure to list? No, I don't think so. I think you have to look. Your test is did the district court take it into account and consider the evidence? And then your presumption is if the judge was not clearly erroneous, then you'll let that stand. Because in sort of judging, you know, this subjective. Because otherwise you're going to get, as a mistake, the most blatant inconsistency will come up with, oh, it was a mistake. Oh, I forgot. You know, that's going to be in every case. So leave some, you know, it's an abuse of discretion, implying the district court gets some discretion. We understand the standard of review, but I can't get you to answer the question. I'm going to give up. I'm sorry. Any other questions? Thank you, then, for your argument, counsel. We'll hear rebuttal. We're done. We're done. Thanks very much. Appreciate it. All right. Your Honors, I will answer your questions. Judge, can you wait just a minute? He needs to pick something up. Thank you. I will answer your question, Judge Smith. I believe that the standard is if there is evidence in the record, particularly at summary judgment, that tends or can show mistake or inadvertence, then OQIN requires that the court at least do an analysis about whether the disclosure or the failure to disclose was inadvertent. Okay. So opposing counsel's argument is you don't have that evidence in the record. Where is it? That evidence in the record, Your Honor, is in several different places. First, in case 1535180 at docket 26, page 14. That is their representative. Sorry, docket 26? Docket 26, page 14. Okay. And there, Mr. Soto, a bankruptcy representative, is telling the court, the bankruptcy court, yes, we acknowledge there is reference to Mr. Nicholson's mistake and failure to disclose in the record, but we don't want you to consider it. That's on that page. Then we have Dan Merkle, who is also a bankruptcy attorney's testimony at 113-133, ER 113-133. We have Mr. Berrini, who was the bankruptcy attorney in the underlying matter at 134-401, and that attaches the periodic reports and the B-26 reports, which were disclosed before confirmation, Your Honor. Finally, I wanted to address this case is a little bit easier to decide than Ocwen, I believe, because of the privity issue. So we're not just talking about Mr. Nicholson's failure to disclose and then he's stopped from arguing his cases in district court. The district court employed Mr. Nicholson's failure to disclose to stop all of the LLCs and their valid causes of action, and that went too far, and on these facts, that attenuates this doctrine so far and renders such substantial harm, rewarding only the bad actor. I gather you agree that there was no basis for the district court to award attorney fees against Mr. Nicholson as a non-signatory to certain of the agreements. Is that correct? Yes, Your Honor, I would fully agree with that. There's no evidence either that he was a signatory to the contract. He did not plead he was a party to the contract in complaint, and there's no dispute that he was party. I believe the defendants acknowledged he was not a party to the contract. Any other questions by my colleagues? Just too quickly, if I could. Did the district court miss the opposing party's request for prejudgment interest on the overpayment of the $103,000 of rent? I think he just didn't address it. Does that sound right to you? I don't believe he addressed that, Your Honor. I'm going to have to rest on the briefing on that one. I'm not quite sure. Okay, and opposing counsel argues pretty persuasively in his brief that your team waived argument as to the repayment for the overpayment of rent. Do you want to respond to that? I don't believe they waived overpayment. Are you talking about the prejudgment or the fact of the overpayment? No, the $103,000 payment. I don't believe that that was waived, Your Honor. I believe that they argued the court, again, conflated the corporate form with an individual with no opportunity for Mr. Nicholson to. In fact, the court in its denial of reconsideration, I realize I'm out of time, but I'd like to finish answering your question. The court realizes in the court's denial of reconsideration that had Mr. Nicholson, it was a little bit inverted, but had Mr. Nicholson argued that he was separate from his entities, the defendants would have been able to bring in facts to support alter ego, therefore recognizing that there were no facts to make such a finding. Thank you, Your Honor. Any other questions? No, Your Honor. No, no. Counsel, we have our rules. We're giving you a little extra time. We appreciate the argument from both counsel, and the case just argued is submitted.
judges: D.W. Nelson, M. Smith, Christen